UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT D. JANISOWSKI,[1]              Case No. 11-12223

       Plaintiff,              Mark A. Goldsmith
v.                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,   Michael Hluchaniuk
                                   United States Magistrate Judge
       Defendant.

_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On May 20, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Mark A. Goldsmith referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 9, 10).

---

[1] Plaintiff's last name is actually Jankowski, however, on his social security card, his last name is "Janisowski." (Dkt. 7-2, Pg ID 72).

B.   Administrative Proceedings

Plaintiff filed the instant claims on January 16, 2008, alleging that he became unable to work on September 4, 2006. (Dkt. 7-5, Pg ID 111). The claim was initially disapproved by the Commissioner on April 24, 2008. (Dkt. 7-4, Pg ID 93-96). Plaintiff requested a hearing and on August 20, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) John Heyer, who considered the case *de novo*. In a decision dated October 21, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 28-37). Plaintiff requested a review of this decision on November 5, 2009. (Dkt. 7-2, Pg ID 26). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[2] (Dkt. 7-2, Pg ID 22-23), the Appeals Council, on March 30, 2011, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 19-21); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 39 years of age at the time of the most recent administrative hearing.  (Dkt. 7-2, Pg ID 35).  Plaintiff's relevant work history included approximately 19 years as a landscaper.  (Dkt. 7-6, Pg ID 135).  In denying plaintiff's claims, defendant Commissioner considered a back injury as possible bases of disability.  (Dkt. 7-6, Pg ID 134).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 4, 2006 through his date lasts insured of December 31, 2008.  (Dkt.7-2, Pg ID 33).  At step two, the ALJ found that plaintiff's lumbar degenerative disc disease was "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found that plaintiff could not perform any past relevant work.  (Dkt. 7-2, Pg ID 35).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of

jobs available in the national economy.  (Dkt. 7-2, Pg ID 35-36).

    B.    <u>Plaintiff's Claims of Error</u>

Plaintiff first claims that the ALJ failed to give controlling weight to plaintiff's treating physician and failed to give good reasons for rejecting his opinions.  According to plaintiff, the ALJ "cherry-picks" the medical records instead of looking at the longitudinal treatment of plaintiff.  Plaintiff also asserts that the ALJ was obligated to contact Dr. Paz for clarification of the reasons for his opinion.  According to plaintiff, the ALJ also improperly relies on Dr. Friedman's opinion, who was not a treating physician.

Next, plaintiff asserts that the ALJ never assessed plaintiff's ability to work a competitive work schedule; i.e. 8 hours a day, 40 hours per week.  Plaintiff suggests that the ALJ's decision is arbitrary, capricious and an abuse of judgment. And, the ALJ never states what weight is given to any of the medical reports or the reasons for allocating such weight.

Plaintiff also argues that the RFC determination did not accurately portray plaintiff's physical impairments and substantial treatment.  According to plaintiff, the ALJ never indicates what his functional limitations are, resulting from the lumbar degenerative disc disease status post January 2008 posterolateral fusion surgery at L4-L5, and S1 and decompressive laminectomies at L4 and L5. Plaintiff contends that the ALJ cites nothing in the record to support his statement

that there is no medical need for plaintiff to lie down several times a day nor miss work two days a week. Plaintiff also says that the ALJ failed to consider his pain complaints or frequency of treatment.

C.      The Commissioner's Motion for Summary Judgment

According to the Commissioner, substantial evidence supports the ALJ's decision to reject Dr. Paz's opinion because it was a legal opinion regarding disability, not a medical opinion regarding function, it was given before plaintiff's back surgery, and was inconsistent with the medical evidence showing improvement after plaintiff's back surgery. The Commissioner also contends that plaintiff has offered no reason that the ALJ should have recontacted Dr. Paz for clarification of his opinions because the ALJ already has sufficient medical information to determine whether plaintiff was disabled; that is, the record was not inadequate.

According to the Commissioner, the ALJ correctly concluded that the evidence showed that plaintiff's condition improved after surgery, citing records through June, 2008, which only established that plaintiff could not perform his prior work as a landscaper. In April, 2008, the state agency consultant, Dr. Joh, determined that plaintiff was capable of performing a limited range of light work. The Commissioner contends that the ALJ was entitled to rely on Dr. Joh's opinion over Dr. Paz because Dr. Joh, as a state agency medical consultant, is a highly

qualified physician who is an expert in the evaluation of medical issues in disability claims.  The ALJ concluded, however, that plaintiff was more limited than Dr. Joh opined.

The Commissioner also argues that the ALJ properly rejected plaintiff's subjective complaints that he needed to lie down several times per day and would miss work two days per week.  Contrary to plaintiff's argument that, "the ALJ points to no medical records" in support of this assertion and relies solely on the fact that plaintiff received conservative treatment prior to his surgery, the Commissioner argues that the ALJ went on for two paragraphs, pointing out evidence showing that plaintiff's condition improved following his surgery.  (Tr. 17).  Specifically, the ALJ noted that plaintiff told Dr. Paz that he felt almost better than before his surgery, an October 2008 MRI showed no significant spinal stenosis or definite disc herniation, Dr. Friedman felt that plaintiff's activities were unduly restricted, and Dr. Joh opined that he was capable of performing a limited range of light work.  (Tr. 17, 189, 244-52, 292, 329).  According to the Commissioner, these facts provided substantial evidence in support of the ALJ's determination that plaintiff's subjective complaints of disabling symptoms were not fully credible and, as the finder of fact, the ALJ's credibility determination is entitled to deference from the Court.

Next the ALJ urges the Court to reject plaintiff's argument that the ALJ

failed to explicitly discuss plaintiff's frequency of treatment because he adequately considered it in assessing plaintiff's RFC.  According to the Commissioner, the ALJ considered and discussed Dr. Paz's treatment notes, thereby implicitly considering the frequency with which Plaintiff was treated by Dr. Paz both prior to and following his January 2008 back surgery.  (Tr. 16-17).  The ALJ also specifically discussed Dr. Paz's January 15, 2008 opinion of disability, in which Dr. Paz reported that he treated plaintiff on a monthly basis for a herniated lumbar disc.  (Tr. 17, 208-09).  The Commissioner maintains that the ALJ was not required to engage in a more explicit discussion of plaintiff's "frequency of treatment."

The Commissioner contends that the Court should reject plaintiff's argument that the ALJ failed to consider whether plaintiff would be capable of performing full-time work, as required by SSR 96-8p (defined as eight hours a day, for five days a week, or an equivalent work schedule).  According to the Commissioner, it is clear from the record that the ALJ's hypothetical question to the VE was premised on plaintiff's ability to perform full-time work.  (Tr. 68-69). In fact, when plaintiff's attorney asked the VE an alternative hypothetical question assuming that plaintiff would have to miss two days of work per week due to his impairments, the VE testified that this would preclude the performance of all work because typically employers will allow only two absences per month at plaintiff's

skill level.  (Tr. 69-70).  Thus, the Commissioner asks the Court to conclude that the ALJ adequately considered plaintiff's ability to perform full-time work, and the VE's testimony provided substantial evidence that plaintiff was not disabled.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

 B. <u>Governing Law</u>

 The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

The undersigned agrees with the Commissioner that the ALJ properly declined to give weight to Dr. Paz's pre-surgery opinion regarding plaintiff's disability, for all the reasons indicated. However, the undersigned is perplexed as to why the ALJ does not appear to have considered Dr. Paz's treatment records for the latter half of 2008 and into 2009. Plaintiff's last date insured was December 31, 2008. Thus, at a minium, treatment records before that date are relevant to his alleged disability. And, while evidence relating to a later time period is only minimally probative, *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), such evidence should be considered to the extent it illuminates a claimant's health before the expiration of his insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), citing *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985) (evidence of medical condition after insurance cutoff must be considered to the extent it illuminates claimant's health before that date.); *see also Brooks v. Comm'r of Soc. Sec.*, 2009 WL 891761 (S.D. Ohio 2009).

The ALJ considered evidence of plaintiff's treatment through early June 2008, but does not appear to have considered any evidence after that date, which shows increasing symptoms and the onset of new issues. On June 12, 2008, plaintiff reported recently developing "sharp pains on the right side of the back."

Report and Recommendation
Cross-Motions for Summary Judgment
*Janisowski v. Comm'r*; 11-12223

(Tr. 334).  On June 17, 2008, plaintiff reported leg twitches and numbness, but no pain.  (Tr. 332).  In August 2008, plaintiff reported minimal discomfort and increased walking.  (Tr. 331).  In September 2008, plaintiff reported tingling of the right side of the thigh with twitching of the legs, pain in the lower extremities, and back pain with walking for long periods of time.  (Tr. 327).  On October 23, 2008, plaintiff reported pain in the perineal area on the left side and low back pain when standing.  Dr. Paz noted a possible bone spur at L5-S1 from the CAT scan and ordered an MRI.  (Tr. 318, 314-315).

The MRI from October 28, 2008 showed (1) mild disc bulging at L3-L4, with moderately severe facet degenerative changes resulting in moderate lateral recess narrowing and neural foraminal narrowing, but no obvious significant spinal stenosis and no definite disk herniation; (2) mild to moderate disk bulging at L4-L5 without central disk herniation or significant spinal stenosis, but with mild to moderate facet degenerative change with at least mild lateral recess narrowing; and (3) mild to moderate diffuse disk bulging at L5-S1 with lateralization, without central herniation, and with moderate facet arthropathy with moderate lateral recess narrowing, but no significant central stenosis.  (Tr. 328-329).  While the ALJ mentioned this MRI, he merely indicated that it showed no significant spinal stenosis or definite disk herniation.  (Tr. 17).

Plaintiff returned to Dr. Paz on November 6, 2008 and reported the same

problems as before, with radicular pain on the left side. Dr. Paz again noted a

bone spur in the foramen on the left side at L5-S1. Plaintiff reported he was going

to try physical therapy. (Tr. 326). On November 25, 2008, plaintiff again reported

pain and numbness in the left lower extremity. Dr. Paz speculated that the bone

spur may be causing the radicular pain because that was the only thing in the

imaging that pointed to the origin of the pain. Dr. Paz added Pamelor to plaintiff's

medication regiment of Neurontin and Vicodin. (Tr. 319).

Plaintiff symptoms continued to worsen in early 2009. In January, he

reported continued radicular pain in the left lower extremity and numbness when

he is lying in bed. According to Dr. Paz, plaintiff was going to consider surgery

for the bone spur. (Tr. 320). In February 2009, plaintiff continued to complain of

numbness of the right leg and stabbing pain in the left lower extremity. While

plaintiff was considering surgery, Dr. Paz continued him on conservative

treatment using Pamelor, Vicodin, and Neurontin. (Tr. 321). In March 2009,

plaintiff reported a worsening of his leg symptoms and indicated that his toes were

numb, and he continued to have low back and leg pain. (Tr. 322).

The ALJ's apparent failure to consider most of Dr. Paz's records from the

latter half of 2008 is particularly problematic because the opinions on which he

did rely – the worker's compensation physician and the state agency consultant –

only had records from the first half of 2008 to support their assessment of

plaintiff's post-surgical condition.  While the ALJ need not mention every piece of

evidence in the record, it seems that there is a critical lack of analysis of plaintiff's

treating physician records from the second half of 2008 in the ALJ's decision,

which requires a remand for consideration of this evidence.  On remand, the ALJ

should also consider whether and to what extent plaintiff's post-December 31,

2008 medical records bear on his condition as of the last date insured.

Plaintiff also claims that the ALJ should have recontacted Dr. Paz to clarify

his opinions.  The Social Security Administration regulation details how to satisfy

this requirement for resolving medical record ambiguities:

> (e) Recontacting medical sources. When the evidence we
> receive from your treating physician or psychologist or
> other medical source is inadequate for us to determine
> whether you are disabled, we will need additional
> information to reach a determination or a decision. To
> obtain the information, we will take the following
> actions.
>
> (1) We will first recontact your treating physician or
> psychologist or other medical source to determine
> whether the additional information we need is readily
> available. We will seek additional evidence or
> clarification from your medical source when the report
> from your medical source contains a conflict or
> ambiguity that must be resolved, the report does not
> contain all the necessary information, or does not appear
> to be based on medically acceptable clinical and
> laboratory diagnostic techniques. We may do this by
> requesting copies of your medical source's records, a
> new report, or a more detailed report from your medical
> source, including your treating source, or by telephoning

> your medical source. In every instance where medical
> evidence is obtained over the telephone, the telephone
> report will be sent to the source for review, signature and
> return.

20 C.F.R. § 404.1512(e)(1); *see also* 20 C.F.R. § 404.1527(c); *Sims v. Apfel*, 530

U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop

the arguments both for and against granting benefits.).

The Sixth Circuit has described a two-part test from Social Security Ruling

96-5p, which parallels the requirements in § 404.1512(e).  First, the evidence in

the record must not support the treating physician's opinion. *Ferguson v. Comm'r*,

628 F.3d 269, 273 (6th Cir. 2010); *see also Lovelace v. Astrue*, 2011 WL 2670450

(E.D. Tenn. 2011).  Second, the ALJ must be unable to ascertain the basis of the

opinion from the evidence in the record.  *Id*.  In *Ferguson*, the Sixth Circuit

determined that the second prong of the test was not met because the ALJ

explained that the applicable physician's opinion was based on self-reported

history and subjective complaints, not on objective medical evidence.  *Id*.  The

Sixth Circuit noted that "to the extent the ALJ 'rejected' Dr. Erulkar's 'opinion of

disability,' he did so not because the bases for her opinion were unclear to him,

but because those bases, Ferguson's self-reported history and subjective

complaints, were not supported by objective medical evidence."  *Id*.

In this case, it is not entirely clear that the ALJ was required to recontact Dr.

Report and Recommendation
Cross-Motions for Summary Judgment
*Janisowski v. Comm'r*; 11-12223

Paz.  The opinion rejected by the ALJ predated plaintiff's surgery and there was not a clear opinion from Dr. Paz for the post-surgery period through the end of 2008.  Rather, Dr. Paz simply included notations in his office notes that plaintiff was to remain off work.  No specific functional limitations were addressed by Dr. Paz for this time frame and the ALJ did not address these notations.  However, given that a remand is necessary as discussed above, the undersigned also suggests that the ALJ should consider whether recontacting Dr. Paz is necessary and appropriate under the circumstances.  As to plaintiff's remaining complaints of error, those too can be addressed by the ALJ on remand, given that a reassessment of plaintiff's credibility, impact of his pain complaints, and the RFC will likely be necessary after addressing the foregoing issues.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 3, 2012                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on August 3, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joshua L. Moore, Laura A. Sagolla, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
